Erin Ronstadt (SBN 028362)
Jeremy Pekas (SBN 025678)
CALDWELL & OBER, P.L.L.C.
1940 East Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745
(602) 761-4443 Fax
erin@caldwellober.com
jeremy@caldwellober.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sandra S. Rose, a single woman;<br><br>Plaintiff,<br><br>v.<br><br>Unum Life Insurance Company of America (an ERISA Plan fiduciary); Vanguard Health Management, Inc. Plan (an ERISA benefits Plan);<br><br>Defendants. | No.<br><br><br>**COMPLAINT** |

For her claims against Defendant Unum Life Insurance Company of America ("Unum") and Vanguard Health Management, Inc. Plan (the "Plan") (collectively "Defendants"), Plaintiff Sandra S. Rose ("Rose") alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.      This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA").

2.      Rose received benefits under the Vanguard Health Management, Inc. Plan, Policy Number 38931 011 (the "Plan.").

3.      The Plan is a purported ERISA benefit plan established by Vanguard Health Management, Inc. ("Vanguard") for the benefit of its employees, including Rose. The Plan is a welfare benefit plan that offered group long-term disability ("LTD") benefits.

4.    At all relevant times, Rose was a participant and beneficiary of the Plan as an employee of Vanguard.

5.    Vanguard is the Policyholder, Plan Administrator, Plan Sponsor and Employer for the Plan.

6.    At all relevant times, Unum administered claims under the Plan and acted on behalf of the Plan, and acted as an agent for the Plan.

7.    Rose funded her participation in the Plan by paying her own premiums with post-tax dollars. Unum fully insured the Plan.

8.    Unum assumed liability for claims arising under the Plan, including Rose's claim.

9.    Rose is a citizen and resident of Maricopa County, Arizona. Rose was a resident of Maricopa County, Arizona at all relevant times.

10.    Unum, a large corporation, has its principal place of business in the State of Tennessee.

11.    The Plan and Vanguard, a large corporation, has its principal place of business in the State of Tennessee.

12.    Unum is licensed and authorized to do business in Maricopa County, Arizona, and resides and is found within Maricopa County pursuant to the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

13.    This Court has jurisdiction over the subject matter of this action under ERISA, 29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory judgments).

14.    Venue is proper in this Court under ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1391(b).

15.    Unum exercised authority to make final decisions regarding the payment of disability benefits for the Plan. Accordingly, Rose is informed and believes that Unum is either: a "named fiduciary" of the Plan pursuant to 29 U.S.C. § 1133(2); and/or a

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ  85016
(602) 277-1745

"deemed fiduciary" pursuant to 29 U.S.C. § 1002 (21)(A); and/or a "designated fiduciary" pursuant to 29 U.S.C. § 1105(c)(1)(B).

16.     Unum does not have the proper discretionary authority to interpret the Plan or to make eligibility determinations regarding the Plan.

17.     Rose is entitled to *de novo* review of her claims.

## GENERAL ALLEGATIONS

18.     All previous paragraphs are incorporated by reference.

19.     Under the Plan, a claimant is "Disabled" if "[he or she is] limited from performing the material and substantial duties of [his or her] regular occupation due to [his or her] sickness or injury;" and "[he or she has] a 20% or more loss in [his or her] indexed monthly earnings due to the same sickness or injury."

20.     Under the terms of the Plan, Unum promises and becomes obligated to pay covered LTD insurance benefits when Rose becomes Disabled.

21.     After 24 months of payments, the Plan defines "Disabled" as follows: "[D]ue to the same sickness or injury, [a claimant is] unable to perform the duties of any gainful occupation for which [he or she is] reasonably fitted by education, training or experience."

22.     The Plan pays a monthly benefit equal to 60% of Rose's Monthly Earnings.

23.     Rose was hired by Vanguard on or about June 2008. She worked as a Credentialing Coordinator for Phoenix Health Plan, which is a subsidiary of Vanguard.

24.     As a Credentialing Coordinator, Rose was responsible for ensuring Phoenix Health Plan's regulatory compliance with all credentialing requirements. Among her responsibilities, she monitored the credentialing database, provided training for staff on credentialing issues, and prepared files and status reports for the Chief Medical Officer and Peer Review Committee.

25.     Among her disabling conditions, Rose suffers from cervical radiculopathy, bilateral knee pain and osteoarthritis, bone infarcts in both knees, osteoporosis, lumbar

-3-

degenerative disc disease, and lumbar spinal stenosis. Rose's knee problems aggravate her lower back issues. She experiences chronic pain from her disabling conditions that require treatment.

26.     Initially, Vanguard permitted Rose to work from home for her knee, neck and low back pain, but eventually, Vanguard would not accommodate her working from home. She could not return to the office as of November 3, 2011 per her physicians' orders, which led to her applying for short-term disability ("STD") benefits.

27.     Rose's last day worked was November 3, 2011 and, as of that date, her Monthly Earnings were $3,221.40.

28.     Rose received STD benefits as of November 7, 2011 and was approved for LTD benefits beginning on May 24, 2012.

29.     Unum approved Rose's LTD claim based on her knee and back issues.

30.     Rose's medical conditions collectively constituted Disability under the Plan as of November 3, 2011 and throughout the Plan's Elimination Period, which ended on May 23, 2012.

31.     If she remained Disabled, Rose was eligible to receive benefits until age 65 under the Plan.

32.     Rose underwent several procedures throughout 2012 for her medical conditions in an effort to control increasing pain and instability with her back and knees.

33.     After consultation with a team of neurosurgeons, on August 10, 2012, Rose underwent an Anterior Lumbar Interbody Fusion surgery (the "lumbar fusion") for her low back pain. Dr. Lieberman performed the lumbar fusion.

34.     Rose continued having severe pain in her lower back even after the lumbar fusion.

35.     After the lumbar fusion, Rose continued to have severe pain in both knees and experienced instability as a result of her knee issues.

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745

36.     Rose's continued pain was debilitating and constituted Disability under the Plan.

37.     Dr. Lieberman never treated Rose for any other medical issues outside of performing the lumbar fusion.

38.     After the lumbar fusion, Rose saw Dr. Zaza for rehabilitative care. Drs. Lieberman and Zaza were part of the same practice team.

39.     Throughout October and November 2012, Dr. Zaza reported that Rose was recovering from the lumbar fusion and could not return to work.

40.     On October 15, 2012, Dr. Zaza estimated for Unum that Rose could return to work in twelve weeks and would be reevaluated in six weeks.

41.     Drs. Lieberman and Zaza did not evaluate Rose for any of her other conditions and only for purposes of the lumbar fusion.

42.     Rose's primary care physician, Dr. Turner, managed Rose's treatment of her collective medical conditions.

43.     On September 24, 2012, Dr. Turner opined that Rose could not work due to severe knee and back pain and that she was still undergoing treatment. He said her work capacity was unknown.

44.     Dr. Turner monitored Rose's progress and consistently reported that she could not return to work due to her severe pain and narcotic medications.

45.     Through "roundtable meetings," Unum closely monitored Rose's progress and anticipated return-to-work date based on the lumbar fusion.

46.     Unum knew that Rose would be released from the care of Drs. Lieberman and Zaza and would seek ongoing treatment regarding her medical conditions.

47.     Unum knew that Dr. Turner would not release Rose for work as of December 2012.

48.     As of December 19, 2012, Unum had not asked Dr. Zaza for restrictions and limitations ("R&Ls"). However, Unum asked Rose's treating physicians if they would

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745

defer to Dr. Zaza's R&Ls before they had even secured Dr. Zaza's R&Ls, knowing that Dr. Zaza's R&Ls would likely be favorable to denial.

49.    Unum asked whether Dr. Turner would defer to Dr. Zaza's R&Ls on December 19, 2012. It identified Dr. Zaza as Rose's "pain management" doctor. At the time it sent the letter to Dr. Turner, it did not have R&Ls from Dr. Zaza.

50.    Misunderstanding the letter, Dr. Turner "deferred" to Dr. Zaza's R&Ls.

51.    On December 19, 2012, Unum also contacted Dr. Turley, Rose's actual pain management doctor. Unum asked if Dr. Turley would confirm if Rose had been released to return to work or if he would be deferring to "Physical Medicine [attending physician] (Dr. Zaza)." On December 21, 2012, Dr. Turley's office called to say that he was not in a position to release her to work, and that Dr. Turner was her Primary Care Physician. His office did not know who took Rose out of work initially.

52.    On January 10, 2013, Unum finally sent a letter to Dr. Zaza, asking only about Rose's physical R&Ls. The letter itself mentioned that Rose was "5 months past her L5-S1 fusion" and "past the typical recovery time." The letter provided physical R&Ls suggested by Unum. The letter only required Dr. Zaza to assent with a checkmark. Dr. Zaza checked the box, agreeing with the Unum-provided R&Ls. The letter was never provided to Rose's other treating physicians.

53.    Unum orchestrated its denial of Rose's claim by soliciting R&Ls from Dr. Zaza.

54.    Unum denied Rose's benefits in a letter dated January 21, 2013.  It based its decision largely on Rose's treating physicians' deference to Dr. Zaza's R&Ls.

55.    Rose timely appealed on January 28, 2013.

56.    As part of Rose's appeal, Dr. Turner wrote a letter dated January 24, 2013 clarifying that he did not intend to defer to Dr. Zaza's R&Ls, especially because he was never provided the opportunity to review Dr. Zaza'a R&Ls, and that it was his opinion

-6-

that Rose could not work. He explained that her significant pain and narcotic medications precluded her from working.

57.     After Rose's appeal, Unum secured a file review from Dr. Scott Norris, who attempted to contact Dr. Turner in a letter dated March 5, 2013. Dr. Norris prepared a file review dated March 1, 2013.

58.     On March 5, 2013, Unum spoke with Rose and did not tell her about Dr. Norris's review and attempt to contact Dr. Turner, even though she expressly asked about the status of her appeal.

59.     On March 5, 2013, Dr. Turner responded to Dr. Norris in writing, explaining that Rose could not work. He explained that she was using significant amounts of pain medication and was still in severe pain and undergoing treatment. He outlined her ongoing treatment. Dr. Turner disagreed with Unum's finding that Rose could work in a sedentary occupation.

60.     Dr. Norris disagreed with Dr. Turner's opinion.

61.     Dr. Norris did not provide any meaningful explanation regarding why he disagreed with Dr. Turner.

62.     Unum sent Rose's claim for a Vocational Review on March 7, 2013 based on Dr. Norris's report.

63.     On March 8, 2013, Rose called Unum and asked to speak with the medical doctor at Unum making a decision on her claim, but she was refused.

64.     Earlier in the claim, Dr. Turley had recommended a Functional Capacity Evaluation, but Unum expressly rejected this suggestion.

65.     Instead of getting a Functional Capacity Evaluation, Unum deferred to Dr. Norris's findings, a Unum employee who had never personally evaluated Rose.

66.     Unum issued its final denial of Rose's claim in a letter dated March 11, 2013.

67.   Unum faulted Rose for Dr. Turner's purported failure to describe the "specific site" of her pain, among other descriptions. At no time during the claim or the appeals process were Rose or Dr. Turner instructed to provide these specific physical findings.

68.   Unum never provided Dr. Turner with the opportunity to cite the physical observations that Unum found lacking.

69.   Rose developed permanent, medically necessary R&Ls that constituted Disability from November 3, 2011 moving forward.

70.   Rose's medical conditions never improved and have worsened since November 2011.

71.   Rose is Disabled from her regular occupation, as well as any gainful occupation for which she is reasonably fitted by training, education and experience.

72.   Rose attempted to find work from home but is physically and cognitively unable to perform in any gainful occupation.

73.   Rose has a pending application for Social Security Disability Insurance benefits.

74.   Rose continues to be Disabled as defined by the Plan.

75.   Rose has exhausted her administrative remedies under the Plan.  Rose satisfied all of the jurisdictional prerequisites to filing a claim, and her claim is timely before this Court.

76.   Rose's claims are subject to *de novo* review.

**COUNT I**
**(Recovery of Plan Benefits)**

77.   All previous paragraphs are incorporated by reference.

78.   The Plan is an Employee Welfare Benefit Plan as defined in ERISA, 29 U.S.C. § 1002.

79.   The Plan provides LTD coverage and promises to provide LTD benefits until Rose is no longer disabled under the terms of the Plan.

-8-

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745

80.     Rose became disabled in 2011, and continues to be disabled. She is unable to perform the material and substantial duties of her regular occupation or any gainful occupation under the terms of the Plan.  She has claimed the benefits under the Plan to which she is entitled.

81.     Rose reasonably believed that she met the requisite criteria for LTD benefits under the Plan, and that she would receive benefits under the Plan until age 65 or until she was no longer disabled.

82.     Unum has improperly terminated LTD benefits to Rose in breach of the Plan. This breach was arbitrary, capricious, an abuse of discretion, imprudent, not supported by substantial evidence, and was clearly erroneous.

83.     Unum's determination that Rose was not entitled to benefits was influenced by an improper conflict of interest.

84.     Unum unreasonably used medical consultants and file reviewers who were without appropriate knowledge, training, and experience to assess Rose's disabling conditions.

85.     Upon information and belief, Unum used in-house reviewers in evaluating Rose's claim, because it knew that the in-house reviewers' recommendations would be unfavorable for the continuation of Rose's benefits.

86.     Dr. Norris had no reasonable basis for his recommended R&Ls and his rejection of Dr. Turner's provided R&Ls.

87.     Dr. Norris failed to properly consider the effect of Rose's medications on her cognitive abilities, requiring that she be virtually comatose from the medications, which is not a requirement of the Plan.

88.     Unum intentionally guided Rose's claim to result in a denial of benefits; Unum manipulated the record by getting Rose's treating physicians to defer to Dr. Zaza's R&Ls, even before it had those R&Ls.

89.     Unum knew that Dr. Zaza's R&Ls would be unfavorable to Rose.

90.    Unum knew that Dr. Zaza's treatment of Rose was exclusively limited to the lumbar fusion surgery.

91.    Unum intentionally misled Rose's treating physicians into agreeing with Dr. Zaza, taking advantage of their busy schedules and confusing them about Dr. Zaza's role in Rose's care.

92.    Unum unreasonably relied on Dr. Zaza's R&Ls to deny Rose's LTD benefits, which was a breach of its fiduciary duty to Rose.

93.    Upon information and belief, the file reviewers, including but not limited to Dr. Norris, are retained by Unum to conduct records reviews.

94.    Upon information and belief, Dr. Norris acted with bias in conducting his file review.

95.    Unum has a history of bias against claimants, which impacted the objectivity and reliability of its administration of Rose's claim.

96.    Unum failed to explain why it credited Dr. Norris over Rose's treating physicians.

97.    Unum relied on new reasons for denial that Rose did not have the opportunity to respond to and relied on reasons not disclosed to Rose, including but not limited to Dr. Norris's rejection of Dr. Turner's opinion and the March 7, 2013 Vocational Review.

98.    Rose has additional evidence to present in support of her eligibility under the Plan.

99.    Because Unum deprived Rose of a full and fair review of her claim, she should be given the opportunity to present evidence regarding Unum's newly raised issues for denial, which will entitle her to a *de novo* review of her claim.

100.    Unum deliberately ignored evidence that was favorable to the continuation of Rose's benefits.

101.    Unum ignored objective findings of Rose's pain complaints without justification.

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745

102.   Unum improperly failed to consider Rose's subjective complaints, as well as the effect of her medications, in determining whether she was Disabled under the Plan.

103.   Unum unreasonably credited unreliable evidence over reliable evidence in its administration of Rose's LTD claim, making its determination contrary to the clear weight of the medical opinion evidence in the record establishing Rose's Disability.

104.   Unum acted as an adversary to Rose, orchestrating its claims handling to support a denial of benefits.

105.   Unum handled Rose's claim in an adversarial manner and failed to administer the Plan prudently and in Rose's best interests.

106.   Unum failed to show that Rose improved or that her conditions significantly changed in terminating her benefits. Unum has not identified and cannot identify any place in the record to show that Rose's overall conditions improved after she was deemed Disabled, or that her lumbar fusion adequately relieved her reported complaints.

107.   Unum actively secured evidence with the intent of denying Rose's benefits.

108.   On multiple occasions throughout its administration of Rose's claim, Unum failed to meaningfully communicate with Rose or to respond to Rose's reasonable inquiries. This included its communications regarding its initial and final denial of Rose's LTD claim.

109.   Unum did not consistently or properly apply the Plan terms, including but not limited to the Plan's definition of Disability.

110.   Unum improperly inserted terms into the Plan that substantially altered the definition of Disability under which Rose is entitled to benefits.

111.   Unum intentionally and in bad faith withheld relevant information in violation of ERISA.

112.   Unum produced incomplete claims procedure guidelines and failed to indicate which procedures were relied upon in its termination of Rose's LTD benefits.

113.   Unum's internal notes demonstrate that Unum has internal protocol, guidelines and communications undisclosed to Rose.

114.   Because of Unum's improper actions, Rose was denied a full and fair review of her claim.

115.   Unum is not entitled to an arbitrary and capricious standard of review of their decision in this action.

116.   Unum's numerous procedural errors rise to the level of a "wholesale and flagrant" violation of ERISA, entitling Rose to *de novo* review.

117.   Vanguard never properly conferred Unum with discretionary authority to administer claims under the Plan in the first place.

118.   Unum had a significant financial conflict of interest with respect to handling, monitoring, and eventually denying Rose's LTD benefits.

119.   Unum took no safeguards to insulate its decision-making process against its significant structural conflict of interest.

120.   Unum offered no evidence that it took safeguards to protect Rose against its structural conflict of interest.

121.   Unum was unduly influenced by its financial conflict of interest, as decision maker and payer of benefits thereunder, when deciding to deny Rose disability benefits.

122.   The record supports that Unum placed its financial interests above Rose's best interests in administering Rose's LTD claim. Unum's bad faith and structural conflict of interest is evidenced by its many procedural irregularities.

123.   Unum breached its fiduciary duties to Rose by failing to provide benefits to which she is entitled under the terms of the Plan.

124.   Unum is equitably estopped from refusing to pay Rose's continued benefits under the Plan.

125.   Rose has exhausted her administrative remedies.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CALDWELL & OBER, P.L.L.C.**
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745

126.    Rose's claims against Unum are timely under the Plan provisions and applicable law.

127.    Pursuant to the coverage provided in the Plan, to ERISA 29 U.S.C. § 1132(a)(1)(B), and to applicable federal and state common law, Rose is entitled to recover all benefits due under the terms of the Plan, and to enforce her rights under the Plan.

128.    Rose is entitled to seek any and all relief allowed pursuant to ERISA, including equitable remedies, in an effort to enforce her rights under the Plan.

129.    Rose is entitled to reinstatement of any other employee benefits that were terminated, discontinued, or suspended as a result of the termination of her disability benefits. She is entitled to a restoration of the *status quo ante* before LTD benefits were wrongfully denied.

130.    Pursuant to 29 U.S.C. § 1132(g), Rose is entitled to recover her attorneys' fees and costs incurred herein from Unum and the Plan.

131.    Rose is entitled to prejudgment interest on the benefits to which she is entitled and on her damages at the highest legal rate until paid.

132.    Unum never provided a proper disclosure of relevant Plan documents to Rose.

133.    Unum owes fiduciary duties to participants in the Plan under ERISA, 29 U.S.C. §§ 1132(a)(2), -(3).

134.    Unum admits that it is a fiduciary under the Plan with fiduciary duties, including the duty to act prudently and in the best interests of Plan participants.

135.    Unum's failure to provide all relevant information, its intentional withholding of relevant information, its numerous procedural irregularities, its financial conflict, its purposeful manipulation of the claim through the use of Dr. Zaza's R&Ls, and its failure to act in Rose's best interests are all breaches of its fiduciary duty under ERISA and the terms of the Plan.

136.   Unum failed to discharge its duties with the care, skill, prudence, and diligence that a prudent man acting in like capacity and familiar with such matters would use under similar circumstances.

137.   Unum acted with malice and in bad faith against Rose, which constitutes a violation of its fiduciary duty.

138.   Unum arbitrarily and capriciously denied Rose's benefits, which constitutes a breach of fiduciary duty.

139.   Unum must return any benefits resulting from its breach to Rose.

140.   Rose is entitled to pursue any equitable remedies that will put her in the position she would have attained but for Unum's breach of its duties under ERISA and the Plan.

141.   Because Unum breached its fiduciary duties, Rose suffered actual harm.

142.   Unum knew that Rose would lose the ability to continue medical treatment if it terminated her LTD benefits.

143.   Unum knew that Rose needed ongoing treatment for her medical conditions, including but not limited to additional treatment for her knees.

144.   Unum's improper denial further exacerbated Rose's conditions and resulted in her inability to seek medical treatment.

145.   Rose relied on Unum and the Plan to her detriment, believing that she was entitled to LTD benefits pursuant to the provisions of the Plan.

146.   Unum was unjustly enriched as a result of its breach of fiduciary duty violations, because it wrongfully withheld benefits for its own profit.

WHEREFORE, Rose prays for entry of judgment against Defendants as follows:

A.   For all past and future LTD benefits under the terms of the Plan;

B.   Enforcing Rose's rights under the terms of the Plan;

C.   Clarifying and determining Rose's rights to future benefits under the terms of the Plan;

-14-

D.      Reopening the administrative record to allow Rose to provide evidence that should have been considered if not for Unum's failure to provide her with a full and fair review;

E.      For an award of Rose's attorneys' fees and costs incurred herein;

F.      For an award of prejudgment interest on benefits and damages at the highest legal rate until paid in full; and

G.      For such further relief as the Court deems just and reasonable.


Dated this 19th day of March, 2014.

                              CALDWELL & OBER, P.L.L.C.


                              By:___s/ Erin Ronstadt_____
                                   Erin Ronstadt
                                   Attorney for Plaintiff

**CALDWELL & OBER, P.L.L.C.**
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745